**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-CR-379-1, 2, 3, (ABJ)** |
| | : | |
| **MARKQUETTE RAJON COWAN,** | : | |
| also known as "Quette," | : | |
| also known as "Lil Why," | : | |
| **CHRISTOPHER JORDAN BROADY,** | : | |
| also known as "Suave," | : | |
| also known as "Swerve," | : | |
| **JOSHUA NICHOLAS STEPHENSON,** | : | |
| also known as "Migo," | : | |
| also known as "3igo," | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OMNIBUS RESPONSE IN OPPOSITION**
**TO DEFENDANTS' PRETRIAL MOTIONS**

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia and undersigned counsel, respectfully files this Omnibus Response in Opposition to Defendant Markquette Rajon COWAN's Motion to Suppress Tangible Evidence (Docket Entry 99-1) (hereinafter "COWAN Suppression"); and "Motion to Strike Prejudicial Language from Indictment" (Docket Entry 100-1) (hereinafter "COWAN Strike"); Christopher Jordan BROADY's "Motion to Suppress Tangible Evidence" (Docket Entry 110) (hereinafter "BROADY Suppression"); and Joshua STEPHENSON'S "Motion to Sever Counts and Defendant" (Docket Entry 111) (hereinafter "STEPHENSON Severance") and "Motion to Suppress Fruits of Warrantless Searches and Seizures." (Docket Entry 112) (hereinafter "STEPHENSON Suppress").

///  ///  ///

///  ///  ///

1

## PROCEDURAL POSTURE

On February 8, 2024, a grand jury sitting in the District of Columbia returned a Superseding Indictment charging Defendants and three additional co-defendants with numerous offenses related to their participation in overlapping conspiracies to distribute controlled substances and discharge, brandish, use, carry, and possess firearms during, in relation to, and in furtherance of a drug trafficking offense.  (Docket Entry 18).

At the Defendants' request, the Court published a Scheduling Order on June 5, 2024. (Docket Entry 58).  The Scheduling Order was amended on February 19, 2025. (Docket Entry 108).  Pursuant to the amended Scheduling Order, the Defendants' pretrial motions were due on February 21, 2025. The Defendants timely filed the aforementioned motions to sever counts and defendants, suppress evidence, and strike surplusage from the Indictment.  (Docket Entries 99, 100, 110, 111, 112).  This omnibus opposition follows.

## ARGUMENT

## I.    THE DEFENDANTS WERE PROPERLY JOINED IN THE SUPERSEDING INDICTMENT, AND THERE IS NO LEGAL BASIS TO SEVER THEM

### A.    THE DEFENDANTS WERE PROPERLY JOINED

An indictment may charge multiple defendants together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." FED. R. CRIM. P. 8(b); Zafiro v. United States, 506 U.S. 534, 535 (1993). "'[J]oinder is preferred in conspiracy cases,' because the conspiracy charge provides a 'common thread that ties all of the defendants and charges together.'" United States v. Suggs, 531 F. Supp. 2d 15, 24 (D.D.C. 2008) (quoting United States v. Eiland, 406 F. Supp. 2d 46, 50 (D.D.C. 2005); United States v. Edelin, 118 F. Supp. 2d 36, 39 (D.D.C.

2000)); see also United States v. Hill, 786 F.3d 1253, 1272 (10th Cir.), cert. denied 577 U.S. 946 (2015). Moreover, as the D.C. Circuit has long held, "Rule 8(b) can be satisfied either by the indictment alone, as 'for instance when a conspiracy charge links all the offenses and defendants,' or by '[s]ubsequent pre-trial representations.'" United States v. Spriggs, 102 F.3d 1245, 1255 (D.C. Cir. 1996), as amended (Feb. 20, 1997) (quoting United States v. Perry, 731 F.2d 985, 990 (D.C. Cir. 1984)).

STEPHENSON appears to concede that he was properly joined in the Superseding Indictment, as his Severance Motion makes no argument to the contrary. See STEPHENSON Severance.   Rather, STEPHENSON contends that Count Three was improperly joined with the other counts in the Superseding Indictment. Id. at 6.  This argument is without merit.

The D.C. Circuit considered a similar issue in United States v. Moore, 651 F.3d 30, 69 (D.C. Cir. 2011).  In Moore, the defendants argued that they were improperly joined under Rule 8(b), and that D.C. Code violations were improperly joined with federal charges related to drug distribution and racketeering.  Id. The Moore Court rejected that argument, holding that "the local offenses charged were committed as acts in furtherance of the charged conspiracy." Id.

The same logic applies to Count Three, which charges STEPHENSON with Carrying a Pistol Without a License, in violation of D.C. Code.  That offense charges that STEPHENSON was carrying a loaded handgun in a vehicle that was stopped approximately one mile from the co-conspirator's territory in the 3300-3500 blocks of Wheeler Road, Southeast.  As charged in Count Two, the co-conspirators armed themselves with handguns and other firearms to defend themselves, their drugs and drug proceeds, and their drug dealing territory from incursions by rivals.  As also charged in Count Two, co-conspirators took firearms with them outside their territory to "spin the block" on rival crewmembers.  Though the United States will not present

evidence that STEPHENSON was intending to "spin the block" on May 20, 2019, when he committed the offense charged in Count Three, the fact that he had his firearm with him when he entered the vehicle as a passenger is part of the series of acts or transactions charged in the Indictment. Count Three is properly joined in the Superseding Indictment.

### B. STEPHENSON HAS FAILED TO JUSTIFY SEVERANCE

STEPHENSON next contends that he is entitled to severance from COWAN and BROADY under Rule 14. STEPHENSON asserts that, absent severance, he will be prejudiced at trial because he was arrested before BROADY and COWAN and, as such, was a member of the conspiracy for a shorter period and charged in fewer overt acts than they are. STEPHENSON Severance, at 7-9. In essence, STEPEHENSON is arguing that he will be prejudiced by spillover evidence if he is tried with COWAN and BROADY. Id. The D.C. Circuit has held that severance on these grounds is not appropriate "'absent a dramatic disparity of evidence[,]'" and no such disparity exists in this case. Moore, 651 F.3d at 95 (quoting United States v. Slade, 627 F.2d 293, 309 (D.C. Cir. 1980)).

"[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 506 U.S. at 540 (citing United States v. Martinez, 922 F.2d 914, 922 (1st Cir. 1991); United States v. Manner, 887 F.2d 317, 324 (D.C. Cir. 1989), cert. denied, 493 U.S. 1062 (1990)); see also Opper v. United States, 348 U.S. 84, 95 (1954); United States v. Halliman, 923 F.2d 873, 884 (D.C.Cir.1991). "Rules 8(b) and 14 are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" Id. (quoting Bruton v. United States, 391 U.S. 123, 131 n. 6 (1968) (internal quotation marks omitted)). As such, joint trials are the preferred method when multiple defendants are charged with

being members of a single conspiracy. Id. The preference for joint trials of co-conspirators is "especially strong when the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two [or more] defendants who are charged, inter alia, with participating in the same illegal acts." United States v. Wilson, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted); see also United States v. Richardson, 167 F.3d 621, 624 (D.C. Cir. 1999); United States v. Ford, 870 F.2d 729, 731 (D.C. Cir. 1989).

By contrast, severance should be granted "sparingly." See United States v. Straker, 800 F.3d 570, 626 (D.C. Cir. 2015). "[A]lthough a district court may grant a severance in a wider array of circumstances," the Supreme Court and the D.C. Circuit have noted that severance is generally limited to instances where "'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Moore, 651 F.3d 30, 95 (D.C. Cir. 2011) (quoting Zafiro, 506 U.S. at 539); see also United States v. Moore, Case No. 18-CR-198 (JEB), 2021 WL 1966570, at *3 (D.D.C. May 17, 2021) (slip opinion) (denying a defendant's motion to sever his trial from that of his co-conspirators). To obtain a severance, the defendant has the burden of establishing the requisite prejudice. See, e.g., United States v. Carson, 455 F.3d 336, 374 (D.C. Cir. 2006).

STEPHENSON does not dispute this legal framework but argues that he should be severed from BROADY and COWAN because the charged conspiracies began before his 18th birthday and continued for more than six months after he was arrested. STEPHENSON Severance, at 7. STEPHENSON further argues that he is prejudiced from proceeding to trial because he has not received discovery related to overt acts for which he is not charged. Id. STEPHENSON cites to no caselaw which would support severance on these grounds.

Contrary to STEPHENSON's argument, the caselaw weighs heavily in favor of a joint trial. COWAN, BROADY, and STEPHENSON were all participants in the charged conspiracies. There is substantial, independent evidence that they worked together, and with the other co-conspirators, to sell marijuana and oxycodone and to arm themselves to protect themselves, their drugs, their cash, and their territory from rivals and others who might rob them. As the D.C. Circuit has noted:

> It is in the nature of a conspiracy prosecution that the evidence against each member will differ, and that the members of the conspiracy will have different roles. That some co-conspirators will be more central than others does not render joint trial inappropriate as long as the jury can reasonably compartmentalize the substantial and independent evidence against each defendant.

United States v. Straker, 800 F.3d 570, 628 (D.C. Cir. 2015) (citing Celis, 608 F.3d at 844-45; Mejia, 448 F.3d at 446–47).

As envisioned in Straker, the United States' evidence at trial will prove beyond a reasonable doubt that COWAN, BROADY, and STEPHENSON played different roles within the charged conspiracies. The evidence will also show that these different roles were each vital to the intended success of the conspiracies, and that COWAN, BROADY, and STEPHENSON relied on one another to perform their respective roles so that they could perform theirs. To the extent that the Court believes that evidence against any one of the co-conspirators will make it difficult for the jury to "compartmentalize" its consideration of the other co-conspirators' guilt, this prejudice can be cured through a limiting instruction. See Ledezma-Cepeda, 894 F.3d at 690; Hill, 643 F.3d at 829; Celis, 608 F.3d at 844.

Severing COWAN, BROADY, and STEPHENSON from a joint trial on the Superseding Indictment would require the United States to present virtually identical trials in seriatim. Each trial would require presentation of digital messages between the co-conspirators, as well as the presentation of overlapping physical evidence, and the testimony of cooperating witnesses who

observed the Defendants' participation in the charged conspiracies. The United States respectfully

suggests that the Court should decline this opportunity to "ignore the general policy favoring joint

trials of defendants indicted together[.]" Sutton, 801 F.2d at 1365.

WHEREFORE, the United States respectfully submits that Defendant STEPHENSON's

Motion to Sever (Docket Entry 111) should be DENIED without a hearing.

## II.    SEARCH WARRANTS 23-SW-303 AND 23-SW-319 WERE BOTH SUPPORTED BY PROBABLE CAUSE, WERE PARTICULAR AND NOT OVERBROAD, AND THE AGENTS RELIED ON THEM IN GOOD FAITH.

### A.    STANDARD OF LAW

#### 1.    Probable Cause

The Fourth Amendment requires that search warrants be supported by probable cause and

state with particularity the places that will be searched and the things that will be seized. U.S.

CONST. Amend. IV  "The law is clear that an affidavit in support of a warrant application 'must

provide the magistrate with a substantial basis for determining the existence of probable cause,'

and it cannot consist of 'wholly conclusory statement[s].'" United States v. Manafort, 314 F. Supp.

3d 258, 266 (D.D.C. 2018) (quoting Illinois v. Gates, 462 U.S. 213, 239 (1983)). "The proponent

of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were

violated by the challenged search or seizure." Id. at 263 (citing Rakas v. Illinois, 439 U.S. 128,

130 n.1 (1978)).

"'In dealing with probable cause . . . as the very name implies, we deal with probabilities.

These are not technical; they are the factual and practical considerations of everyday life on which

reasonable and prudent men, not legal technicians, act.'" Gates, 462 U.S. at 231 (quoting Brinegar

v. United States, 338 U.S. 160, 176 (1949)). As Gates reiterated, "'[t]he process does not deal with

hard certainties, but with probabilities. . . [or] common-sense conclusions about human

behavior[.]'" Id. (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)); see also United States v. Dixon, 787 F.3d 55, 60 (1st Cir. 2015) (holding that a search warrant affidavit was sufficient, even though it "contained no observations of [defendant] engaging in other activities deemed to be drug related in or in the vicinity of" his apartment[,]" because probable cause "requires only a 'fair probability'—not certainty—that evidence of a crime will be found in a particular location.")

## 2.        Particularity/Overbreadth

Even if a search warrant is supported by probable cause, it will not pass Constitutional muster if it does not describe, with particularity, the location of the search and the things to be searched for and seized. Groh v. Ramirez, 540 U.S. 551, 557-65 (2004).  The particularity requirement not only prevents against general searches, but also ensures the person being searched that the officer is possessed of lawful authority to conduct the search. See, e.g., Maryland v. Garrison, 480 U.S. 79, 84 (1987); Marron v. United States, 275 U.S. 192, 196 (1927). "'Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'" Manafort, 314 F. Supp. 3d at 263-64 (quoting United States v. Hill, 459 F.3d 966, 973 (9th Cir. 2006); United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993)).

Notwithstanding the particularity requirement, warrants authorizing the search of electronic data are not "overbroad" simply because they allow law enforcement to search the entirety of that data for evidence of a specified criminal offense.  See United States v. Williams, 592 F.3d 511, 521-23 (4th Cir. 2010) (noting that "the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search

of a file cabinet containing a large number of documents"); see also United States v. Skinner, 2021 WL 1725543, at **15-16 (E.D. Va. 2021); United States v. Karrer, 260 Fed. App'x 157, 161 (3d Cir. 2012) (citations omitted). Moreover, when executing such a warrant, law enforcement is entitled to seize evidence of non-specified criminal activity that is observed in "plain view" while searching for evidence of specified criminal activity. Williams, 592 F.3d at 521-23 (citing Horton v. California; 496 U.S. 128, 136 (1990); Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976)); Karrer, 260 Fed. App'x. at 163-64 (citing Horton, 496 U.S. at 141; United States v. Stabile, 633 F.3d 219, 240-42 (3d Cir. 2011); United States v. Menon, 24 F.3d 550, 559 (3d Cir. 1994)).

**3.    Standard of Review for Judicially Authorized Search Warrants**

The "'task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that . . . evidence of a crime will be found in a particular place.'" Manafort, 314 F. Supp. 3d at 266 (quoting Gates, 462 U.S. at 238); see also United States v. McCormick, ___ F. Supp. 3d ___, ___, 2019 WL 3718944, at *2 (D.D.C. Aug. 7, 2019); United States v. Ali, 870 F. Supp. 2d 10, 25 (D.D.C. 2012). On review, the magistrate's probable cause determination is entitled to "great deference." United States v. Spencer, 530 F.3d 1003, 1006 (D.C. Cir. 2008) (citing Gates, 462 U.S. at 236).

The Supreme Court has long held that such deference encourages officers to seek a warrant prior to executing a search. United States v Ventresca, 380 U.S. 102, 105-06 (1965) (noting that "the deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried actions of officers.")  As the D.C. Circuit has held, "[e]ven if we disagree with the judge's probable-cause determination after giving it 'great deference,' that disagreement alone does not justify exclusion of evidence. That is because the "exclusionary rule was adopted to deter

unlawful searches by police, not to punish the errors of magistrates and judges.'" <u>Spencer</u>, 530 F.3d at 93 (quoting <u>Massachusetts v. Sheppard</u>, 468 U.S. 981, 990, (1984)). Thus, the duty of a reviewing court "'is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" <u>Ali</u>, 870 F. Supp. 2d at 25 (quoting <u>Gates</u>, 462 U.S. at 238–39).

### 4. <u>Good Faith Reliance on a Search Warrant</u>

It is well established that law enforcement is entitled to rely on a magistrate's probable cause determination. <u>United States v. Leon</u>, 468 U.S. 897, 921 (1984). It is equally well established that "an officer cannot be expected to question the magistrate's probable-cause determination. . . ." <u>Id.</u>, <u>quoted</u> <u>in</u> <u>Spencer</u>, 530 F.3d at 1006; <u>see also</u> <u>United States v. Maxwell</u>, 920 F.2d 1028, 1034 (D.C. Cir. 1990). As such, "[s]o long as the officer relied in objective good faith on the issuing judge's determination, reviewing courts may not apply the exclusionary rule." <u>Spencer</u>, 530 F.3d at 1006-07. The <u>Spencer</u> Court noted that "the 'degree of police deference to the magistrate which is perceived by courts as reasonable under <u>Leon</u> exceeds significantly that 'great deference' owed the magistrate by reviewing courts under <u>Gates</u>.'" <u>Id</u>. at 1007 (quoting 1 Wayne R. Lafave, Search and Seizure § 1.3(f), at 97–98 (4th ed.2004) (footnote omitted). In short, police officers are "entitled to presume that the magistrate knows what he is doing." <u>Id</u>.

In cases where law enforcement relies on a warrant that is later determined to lack probable cause, the reviewing court must balance the deterrent value of excluding evidence against the fact that such exclusion unacceptably impedes the Court's truth-finding functions. <u>Leon</u>, 468 U.S. at 907; <u>United States v. Payner</u>, 447 U.S. 727, 734 (1980); <u>Stone v. Powell</u>, 428 U.S. 465, 490 (1976). As Judge Huvelle noted in <u>Ali</u>:

> When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct

involves only simple, isolated negligence, the deterrence rationale loses much
of its force, and "exclusion cannot pay its way."

870 F. Supp. 2d at 24 (citing <u>Davis v. United States</u>, 564 U.S. 229, 237-40 (2011); <u>Herring v.</u>

<u>United States</u>, 555 U.S. 135, 144 (2009), and quoting <u>Leon</u>, 468 U.S. at 908 n. 6.). Consequently,

the reviewing court must determine the objective reasonableness of the officers' reliance by

considering "'whether a reasonably well-trained officer would have known that the search was

illegal' in light of 'all of the circumstances.'" <u>Id</u>. (quoting <u>Herring</u>, 555 U.S. at 145; <u>Leon</u>, 468

U.S. at 922 n.23). As this Court has recognized, "[t]his good faith exception to the exclusionary

rule applies not only when a reviewing court concludes that the affidavit in support of the warrant

lacked probable cause, but also to warrant is later found to be overbroad." <u>Manafort</u>, 313 F. Supp.

3d at 236.

### 5.     <u>Conclusory Challenges to a Search Warrant's Sufficiency Do Not Warrant an Evidentiary Hearing</u>

Courts in this Circuit have clearly articulated that "it is a 'normal process' for a court to

review the legal sufficiency of an affidavit to support probable cause without an evidentiary

hearing." <u>United States v. Bikundi</u>, 125 F. Supp. 3d 178, 190 (D.D.C. 2015) (citing <u>Massachusetts</u>

<u>v. Upton</u>, 466 U.S. 727, 728 (1984); <u>United States v. Matthews</u>, 753 F.3d 1421, 1326-27 (D.C.

Cir. 2014)). This is true because "the task of a reviewing court is not to conduct a <u>de novo</u>

determination of probable cause, but only to determine whether there is substantial evidence in the

record supporting the magistrate's decision to issue the warrant." <u>Id</u>. (quoting <u>Gates</u>, 462 U.S. at

236-39). Put another way, the sufficiency of a search warrant affidavit does not require the Court

to resolve a "material factual dispute" and, absent such a factual dispute, an evidentiary hearing is

not warranted.   <u>United States v. Villegas</u>, 388 F.3d 317, 324 (7th Cir. 2004); <u>United States v.</u>

<u>Barrera</u>, 843 F.2d 1576, 1581 (10th Cir. 1988) (noting that a "consideration of the probable cause

showing must be based solely on the facts and circumstances presented in the affidavit when application for the warrant was made").

In order to justify an evidentiary hearing, the defendant's attack on the affidavit supporting the warrant "must be more than conclusory." United States v. Becton, 601 F.3d 588, 594 (D.C. Cir. 2010) (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)). Moreover, the defendant must tender allegations that  "(1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth.'" Becton, 601 F.3d at 594 (quoting United States v. Richardson, 861 F.2d 291, 293 (D.C. Cir. 1988), and citing Franks, 438 U.S. at 155-56); see also United States v. Gaston, 357 F.3d 77, 80 (D.C. Cir. 2004).

## B.   COWAN'S MOTION TO SUPPRESS

COWAN's cellular telephone was seized and searched pursuant to Search Warrant 23-SW-303, which authorized the search of 3700 9th Street, Southeast, Apartment 1018 ("the PREMISES"), and further authorized the search of any digital devices located in that residence. Exhibit One.  COWAN argues that the seizure of his cellular telephone was illegal and unsupported by probable cause. COWAN Suppression, at 2. Without citation to authority, COWAN further argues that the seizure of his phone was improper because BROADY, not COWAN, was the target of Search Warrant 23-SW-303. Id. at 3. None of COWAN's suppression arguments has merit.[1]

---

[1] COWAN does not assert any facts, cite any caselaw, or make any arguments which could be reasonably understood to assert a Franks challenge to the Search Warrant. COWAN Suppression, at 1-3.  Consequently, COWAN has failed to raise an argument which would justify an evidentiary hearing on this motion.  Becton, 601 F.3d at 594 (quoting United States v. Richardson, 861 F.2d 291, 293 (D.C. Cir. 1988), and citing Franks, 438 U.S. at 155-56); see also United States v. Gaston, 357 F.3d 77, 80 (D.C. Cir. 2004

12

Search Warrant 23-SW-303 is sufficiently particular and not overbroad. The warrant specifies the location of the search. "The Overlook Apartments, 3700 9th Street, Southeast, Apartment 1018, Washington, DC 20032 is a ten story apartment building. The outer façade of the apartments is light-colored brick with some orange bricks. The PREMISES is located on the 10th floor of the building on the east side." Exhibit One, at 4. The warrant further specifies the items to be searched for and seized, including but not limited to: "Digital devices used in the commission of, or to facilitate, the violation of 21 U.S.C. § 841(a) (Illegal Sale and Distribution of Narcotics) 18 U.S.C. § 924(c) (Firearm in Use of a Drug Trafficking Crime)." Id. at 7. This satisfies the particularity requirement. Groh, 540 U.S. at 557-65. Moreover, even if this Court were to determine that the warrant is overbroad, law enforcement was entitled to rely on the issuance of the warrant in good faith. Leon, 468 U.S. at 921; Manafort, 313 F. Supp. 3d at 236.

Search Warrant 23-SW-303 is also supported by probable cause. Special Agent ("SA") Rothman began by outlining the evidence related to a "rolling shootout" near the intersection of 3rd Street, Southeast, and Atlantic Street, Southeast, on June 5, 2023, which resulted in BROADY's arrest by MPD Officers. Id. at 13-29. SA Rothman then detailed BROADY's prior contacts with law enforcement related to controlled substances and firearms. Id. at 29. SA Rothman then outlined evidence gathered through his investigation which indicated that the PREMISES had been used as a "trap house" for the storage of firearms and the storage and sale of controlled substances. Id. at 30-41. This recitation began with statements made by a cooperating witness who identified the person that maintained that trap house as "Larry Love." That witness identified COWAN as "Larry Love's" blood cousin, and stated that COWAN was known to be inside the PREMISES frequently. Id. at 30. SA Rothman then described the ways in which the investigation

13

corroborated the cooperating witness' statements identifying "Larry Love" as the individual that maintained the PREMISES as a trap house. Id. at 31-33.

SA Rothman then provided examples of digital messages which discussed the storage and sale of controlled substances at the PREMISES, which was generally referred to by co-conspirators as "the High Rise." Id. at 33-41. SA Rothman then described geolocation data collected from BROADY's cell phone pursuant to a federal search warrant, which showed the phone's presence in the vicinity of the PREMISES over a span of 43 days. Id. at 41-43. Next, SA Rothman described that MPD Officers responded to the PREMISES on August 1, 2023, based on a call that a woman had knocked on the door looking for BROADY and an unknown black male had answered the door and brandished a firearm at her. Id. at 43-44. The responding officers spoke with COWAN who confirmed that he had a had a firearm inside the residence and that he had concealed carry permits issued by the District of Columbia and the State of Maryland. Id. at 44. The officers entered the apartment to confirm the validity of the permits. One of the officers reported seeing marijuana and packaging material while he was inside COWAN's bedroom reviewing the permits. Id. at 44-45. Finally, SA Rothman detailed additional geolocation data from BROADY's cell phone, which had also been collected pursuant to a federal search warrant, which showed the phone's presence in the vicinity of the PREMISES closer in time to the requested search of the PREMISES. Id. at 45-46.

The evidence outlined by SA Rothman satisfies the probable cause requirement. Gates, 462 U.S. at 231; Brinegar, 338 U.S. at 176. Moreover, even if this Court were to determine that the warrant is not supported by probable cause, law enforcement was entitled to rely on the issuance of the warrant in good faith. Leon, 468 U.S. at 921.

14

WHEREFORE, the United States respectfully submits that Defendant COWAN's Motion to Suppress (Docket Entry 99-1) should be DENIED without a hearing.

### C.    BROADY'S MOTION TO SUPPRESS

BROADY's cellular telephone was seized incident to his arrest, and searched pursuant to Search Warrant 23-SW-319.  Attachment Two.  BROADY argues that the Search Warrant was not supported by sufficient probable cause and "did not provide a sufficient nexus between the underlying criminal acts under investigation in this case, and the cell phone. . . ." BROADY Suppression, at 1. This argument is without merit.[2]

Search Warrant 23-SW-319 is sufficiently particular and not overbroad. The warrant specifies the items to be searched: "One Apple iPhone in a black case, with telephone number (202) 210-4534, (hereinafter the "TARGET DEVICE"). The TARGET DEVICE was seized from the front left pocket of Christopher BROADY incident to his arrest on a federal arrest warrant in Case Number 23-CR-315-1." Exhibit 2, at 4.[3]  The warrant further specifies the items to be searched for and seized, including but not limited to: "items, information, and data [that] are fruits, evidence, information relating to narcotics and firearms possession/trafficking offenses in violation of violations of 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) and 18 U.S.C. § 924(c)(1) (Using, Carrying, and Possessing Firearms During, in Relation to, and in

---

[2] BROADY does not assert any facts, cite any caselaw, or make any arguments which could be reasonably understood to assert a Franks challenge to the Search Warrant. BROADY Suppression, at 1-2.  Consequently, BROADY has failed to raise an argument which would justify an evidentiary hearing on this motion.  Becton, 601 F.3d at 594 (quoting United States v. Richardson, 861 F.2d 291, 293 (D.C. Cir. 1988), and citing Franks, 438 U.S. at 155-56); see also United States v. Gaston, 357 F.3d 77, 80 (D.C. Cir. 2004

[3] Search Warrant 23-SW-319 also requests permission to search "One plastic bag, knotted at the top, seized form the area where Christopher BROADY was standing when he was placed under arrest on a federal arrest warrant in Case Number 23-CR-315-1." Exhibit 2, at 4. BROADY's motion does not challenge the propriety of the search warrant with regard to this item.

Furtherance of a Drug Trafficking Offense) (the "TARGET OFFENSES")." Id. at 5. This satisfies the particularity requirement. Groh, 540 U.S. at 557-65. Moreover, even if this Court were to determine that the warrant is overbroad, law enforcement was entitled to rely on the issuance of the warrant in good faith. Leon, 468 U.S. at 921; Manafort, 313 F. Supp. 3d at 236.

Search Warrant 23-SW-319 is also supported by probable cause. SA Rothman began by providing geolocation data from BROADY's cell phone, which had also been collected pursuant to a federal search warrant, which showed the presence of that cell phone at 3700 9th Street, Southeast – the PREMISES for the search requested in 23-SW-303. Exhibit 2, at 10-11. SA Rothman next explained that, in addition to 23-SW-303, he had applied for and received Search Warrant 23-SW-304, which authorized the search of 2758 Shipley Terrace, Southeast, and FBI intended to execute the warrants simultaneously. Id. at 11. SA Rothman then noted that the FBI expected to arrest BROADY at the PREMISES during the execution of 23-CR-303, but his geolocation data showed that BROADY traveled from that location to 2758 Shipley Terrace shortly before the warrants were to be executed. Id. at 11-12.

SA Rothman then described the evidence seized during the execution of 23-SW-303 which connected both BROADY and COWAN to drug trafficking and firearms possession at the PREMISES:

> 12.    FBI agents arrived at PREMISES [ ] to execute search warrant 23-SW-303, at approximately 8:00 p.m. Markquette cowan was the only person present inside PREMISES [ ] when FBI arrived.
>
> > a.    During the execution of the search warrant, FBI agents observed and seized mail matter, debit cards, and other evidence indicating that both Cowan and BROADY were residing at PREMISES [ ] – which Your Affiant knows to be a two-bedroom apartment.
> >
> > b.    During the execution of the search warrant, FBI agents observed and seized two loaded handguns, one unloaded 12-guage shotgun, dozens of rounds of ammunition in a variety of calibers, one set of body

16

armor – including helmet – approximately four pounds of marijuana packaged for distribution, a large duffel bag full of individual packages of THC-infused "edibles" and three bottles of Promethazine-DM syrup.

Id. at 12.

SA Rothman then described his arrest of BROADY outside 2758 Shipley Terrace at approximately 8:05 p.m., and his seizure of BROADY's cellular telephone from his front left pants pocket along with three small plastic bags of marijuana that were all contained within a larger plastic bag, consistent with marijuana distribution. Id. Finally, SA Rothman described surveillance footage of BROADY leaving the PREMISES at 7:26pm – approximately 40 minutes before his arrest – carrying a black plastic bag with unknown contents. Id. at 12. SA Rothman explained that geolocation information from BROADY's cellular telephone showed that it was used while BROADY was in transit from the PREMISES to 2758 Shipley Terrace, Southeast, and that a black plastic bag visually identical to the bag seen in the surveillance footage was seized from the area where BROADY was standing when he was arrested. Id. at 13-14.

The evidence outlined by SA Rothman satisfies the probable cause requirement. Gates, 462 U.S. at 231; Brinegar, 338 U.S. at 176. Moreover, even if this Court were to determine that the warrant is not supported by probable cause, law enforcement was entitled to rely on the issuance of the warrant in good faith. Leon, 468 U.S. at 921.

WHEREFORE, the United States respectfully submits that Defendant BROADY's Motion to Suppress (Docket Entry 110) should be DENIED without a hearing.

## III.    THE INVENTORY SEARCH OF A MERCEDES SEDAN ON MAY 20, 2019 DID NOT VIOLATE THE FOURTH AMENDMENT

On May 20, 2019, United States Park Police ("USPP") Officer Greulich was on patrol when he saw a Mercedes sedan with a Virginia temporary tag number 37714K driving on Alabama Avenue, Southeast. Suspecting that the tag might be counterfeit, Officer Greulich ran a check of

the tag which revealed that the tag was assigned to a Toyota sedan.  Officer Greulich then effected

a traffic stop and observed two men inside the Mercedes sedan. STEPHENSON, who was later

identified by way of his D.C. Learner's Permit, was seated in the front passenger seat.

During the traffic stop, the driver stated that he purchased the Virginia temporary tag from

someone in Maryland, and claimed that the same person had sold him the Mercedes sedan. The

driver admitted that he could not provide any proof of ownership, but presented a D.C.

identification card and stated that he did not have a valid driver's license. Officer Greulich

conducted a check and learned that the driver's license had been suspended, and that the driver

was not legally authorized to drive.  At that time, the driver was placed under arrest for driving

with a suspended license. Officer Greulich ran a check of the Mercedes sedan's VIN and learned

that the vehicle was not registered anywhere.

Officer Greulich was thus faced with an unregistered vehicle which could not be legally

driven and for which  no proof of ownership could be provided. Even if he could justify releasing

the Mercedes to be driven away, neither the driver (who was under arrest for driving with a

suspended license) nor STEPHENSON (whose Learner's Permit required him to be accompanied

by a licensed driver) could legally drive it. As a result, Officer Greulich's only course of action

was to impound the vehicle. Having decided to impound the Mercedes sedan, Officer Greulich

undertook an inventory search of its contents.[4]  During the inventory search, Officer Greulich

discovered a black bag on the floor of the rear passenger compartment behind the front passenger

seat.  Officer Greulich opened the bag and observed a black and gray Smith and Wesson, Model

---

[4] The United States concedes that the search of the vehicle would not be justified as a search
incident to the driver's arrest, because a search of the vehicle would be unlikely to yield evidence
related to the crime of driving with a suspended license.  Arizona v. Gant, 556 U.S. 332, 339-44
(2009)

SW9VE 9mm semi-automatic handgun. Officer Greulich then placed STEPHENSON under arrest as well and transported both men to the USPP station for processing.[5]

STEPHENSON argues that the firearm seized by Officer Greulich must be suppressed because the seizure violated the Fourth Amendment. STEPHENSON Suppression, at 3-4. This argument is without merit.

When vehicles are impounded, police departments "generally follow a routine practice of securing and inventorying the automobiles' contents." South Dakota v. Opperman, 428 U.S. 364, 369 (1976) (citing cases and noting that inventory searches are permissible to protect individuals' property, to protect the police from claims of lost or stolen property, and to protect police officers from potentially dangerous items). The caselaw accords "deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody." Colorado v. Bertine, 479 U.S. 367, 371-72 (1987) (citing Cady v Dombrowski, 413 U.S. 433, 447-48 (1973); Harris v. United States, 390 U.S. 234, 236 (1968); Cooper v. California, 386 U.S. 58, 61-62 (1967)).

The Supreme Court has noted that inventory searches may still be "reasonable" within the meaning of the Fourth Amendment, even if they are "not conducted pursuant to a warrant based on probable cause." Bertine, 479 U.S. at 371-72. Further, the "reasonableness" of an inventory search "does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." Illinois v. Lafayette, 462 U.S. 640, 647-48 (1983). "Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers

---

5 This case was not charged immediately following the arrest, but rather a sample of STEPHENSON's DNA was taken by way of buccal swab. STEPHENSON's DNA was found to be a match for DNA found on swabs taken from the firearm.

. . . to make fine and subtle distinctions in deciding whether containers or items may be searched and which must be sealed as a unit." Id. at 648 (citing United States v. Ross, 456 U.S. 798, 821 (1982); New York v. Belton, 453 U.S. 454, 458-60 (1981); Dunaway v. New York, 442 U.S. 200, 213-14 (1979)).

Officer Greulich did not set out to search the Mercedes seden, nor did he engage in an unjustified rummaging of its contents in hopes of finding evidence of a crime. Rather, as the result of a lawful traffic stop, Officer Greulich was left with a vehicle had to be impounded because it could not be legally driven and neither of its occupants could legally drive it. He then conducted an inventory search to ensure that he was not inadvertently introducing a dangerous item into police custody, and also to protect himself and the USPP against later claims that something had been lost or stolen from inside the vehicle. Such inventory searches are valid according to Supreme Court caselaw, and Officer Greulich's conduct was reasonable under the circumstances.

WHEREFORE, the United States respectfully submits that STEPHENSON's Motion to Suppress (Docket Entry 112) should be DENIED without a hearing.

## IV.    THE NAMES BY WHICH THE DEFENDANTS SELF-IDENTIFY SHOULD NOT BE STRICKEN FROM THE INDICTMENT OR EXCLUDED AT TRIAL

COWAN moves to strike the use of his aliases "Quette" and "Lil Why" from the Indictment on the grounds that the aliases constitute surplusage. COWAN Strike, at 1. In support of his argument, COWAN asserts that the aliases should be stricken because they are irrelevant, inflammatory, and prejudicial. Id. at 3. This argument is without merit.

Motions to strike surplusage from Indictments are "highly disfavored" in the D.C. Circuit. United States v. Watt, 911 F. Supp. 538, 554 (D.D.C. 1995) (Lamberth, J.) (citing United States v. Jordan, 626 F.2d 928, 930 (D.C. Cir. 1980) ("[t]he standard under Rule 7(d) has been strictly construed against striking surplusage")). Consequently, "'a motion to strike surplusage should be

granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a rather exacting standard, and only rarely has surplusage been ordered stricken.'" Id. (quoting Charles A. Wright, FEDERAL PRACTICE & PROCEDURES: CRIMINAL § 127, at 426 (2d ed. 1982)).

Courts in this Circuit have routinely held that an Indictment's identification of a defendant's alias or nickname was not sufficiently prejudicial to warrant striking that information. See United States v. Apodaca, 275 F. Supp. 3d 123, 158 (D.D.C. 2017) (denying motion to strike aliases as "surplusage," and noting that "testifying witnesses are anticipated to refer to the defendants by their aliases while testifying, presumably because this is how the defendants were known to those witnesses. In such circumstances, the use of the defendants' aliases both in the indictment and in connection with the presentation of evidence at trial, through witness testimony and in transcripts of recorded or intercepted communications, is not unfairly prejudicial.") (Howell, J.); United States v. Palfrey, 499 F. Supp. 2d 34, 40 (D.D.C. 2007) (denying defense motion to strike three aliases listed in indictment "[b]ecause the Government credibly asserts that these aliases are necessary to identify Defendant at trial, and because Defendant has shown no prejudice inherent in those aliases") (Kessler, J.); United States v. Brodie, 326 F.Supp.2d 83, 90 (D.D.C. 2004) ("The general rule regarding the use of aliases is that 'if the government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment, the inclusion of the alias in the indictment is both relevant and permissible, and a pretrial motion to strike should not be granted.'") (citation omitted) (Huvelle, J.).

Here, just as in Apodaca, Palfrey, and Brodie, the United States' trial evidence will show that OWAN, BROADY, and STEPHENSON referred to each other by their aliases, or street

nicknames, rather than by their given names. The evidence will also show that COWAN, BROADY, and STEPHENSON self-identified by their aliases, rather than by their given names. Consequently, the United States must introduce evidence of those aliases in order for the jury to understand "who is who" with regard to the numerous digital messages and other communications that will be admitted at trial.

The Court has saw a relevant example of this during the trial of United States v. Broadus Daniels and Andre Willis, Case Number 22-CR-303. The United States' evidence included GEX 204.1 – a recorded jail call made by Broadus Daniels on April 14, 2023.  A transcript of that call was also introduced to the jury. GEX 204.1T (Exhibit 3).  During that call, Daniels spoke with numerous individuals about his belief that "Love" was a confidential informant providing information to the FBI.

COWAN (Speaker 4) and BROADY (Speaker 3) were among those that spoke with Daniels that day.  Both COWAN and BROADY self-identified by their aliases as follows:

SPEAKER 3: Yo

MR. DANIELS: Who is this?

SPEAKER 3:  This Suave, bro.

MR. DANIELS: Man, yeah man, Fonzo told you what I said, bruh?

SPEAKER 3:  Yeah

. . .

SPEAKER 4:  What you say?

MR. DANIELS:  Who is this?

SPEAKER 4: This is Why.  This Lil Why.

MR. DANIELS: Who the fuck is Why?  I don't even know a Why.

SPEAKER 4:  Quette, Yo.

GEX 204.1T, at 8. Later in the call, DANIELS specifically requested to talk to BROADY by referencing his alias.

MR. DANIELS: 85 – Put Suave on the phone –

SPEAKER 1: 1535.  You put 856, n****.

MR. DANIELS: Oh, all right.  Put Suave on the phone.

SPEAKER 1:  Huh?

MR. DANIELS: Put Suave on the phone.

SPEAKER 1: (Unintelligible)

MR. DANIELS: Put Suave on the phone.  Put Suave on the phone.

SPEAKER 1: (Unintelligible)

MR. DANIELS: Yo, put Suave on the Phone.  Where Suave and them n***** at?

SPEAKER 1:  Suave?

MR. DANIELS: Yeah.

SPEAKER 1:  Oh, all right.

(talking over each other)

MR. DANIELS: Hello?

SPEAKER 3: Yeah.

Id. at 10.

GEX 204.1T is but one of dozens of examples of the Defendants' use of their aliases rather than their given names during their communications. The inclusion of the Defendants' aliases is not surplusage; indeed the jury would be unable to consider the evidence of the charged

conspiracies' existence and operation without knowing the names by which the Defendants self-identified on the street.

WHEREFORE, the United States respectfully submits that Defendant COWAN's Motion to Strike Prejudicial Language from the Indictment (Docket Entry 100-1) should be DENIED without a hearing.

## CONCLUSION

The Superseding Indictment properly joined COWAN, BROADY, and STEPHENSON because they all conspired with each other, and with others, to distribute controlled substances and to use, carry, and possess firearms during, in relation to, and in furtherance of their drug distribution conspiracy. STEPHENSON is not entitled to severance of either himself or Count Three, because he has failed to demonstrate that a joint trial on all of the charged offenses will result in prejudice cannot be remedied through a limiting instruction.

Moreover, Search Warrants 23-SW-303 and 23-SW-319 are both sufficiently particular, are not overbroad, and both are supported by sufficient probable cause, or, in the alternative, the FBI was entitled to rely on them in good faith. Similarly, USPP Officer Greulich's inventory search of the Mercedes Benz sedan was reasonable under the circumstances and did not violate the Fourth Amendment. Finally, the aliases by which the Defendants self-identify and are known to each other are not "surplusage" and their inclusion in the Superseding Indictment, and at trial, are not unduly prejudicial.

WHEREFORE, the United States respectfully requests Defendant COWAN's Motion to Suppress Tangible Evidence (Docket Entry 99-1) and "Motion to Strike Prejudicial Language from Indictment" (Docket Entry 100-1), Defendant BROADY's "Motion to Suppress Tangible Evidence" (Docket Entry 110), and Defendant STEPHENSON'S "Motion to Sever Counts and

Defendant" (Docket Entry 111) and "Motion to Suppress Fruits of Warrantless Searches and

Seizures." (Docket Entry 112) should all be DENIED without a hearing.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. BAR NO. 481866

By:    */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov